UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTHONY CAVALLARO,

                        Plaintiff,

    v.                                                         **DECISION AND ORDER**
                                                                              17-CV-56S

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

       1.       Plaintiff Anthony Cavallaro challenges the determination of an Administrative Law Judge ("ALJ") that he is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that he has been disabled since March 6, 2012, due to injuries sustained from falling off a ladder that include a diagnosis of a left pelvic fracture, open left thumb, left elbow laceration, small intracranial hemorrhage, and a L5 process fracture. Plaintiff contends that his impairments render him unable to work, and thus, he is entitled to disability benefits under the Act.

       2.       Plaintiff filed an application for disability insurance benefits on March 27, 2012, which the Commissioner denied on July 13, 2012. Plaintiff thereafter requested a hearing before an ALJ. On July 25, 2013, ALJ Eric Glazer held a hearing in Buffalo, New York, at which Plaintiff appeared with counsel and testified. The ALJ considered the case *de novo*, and on August 23, 2013, issued a decision denying Plaintiff's application for benefits. The Appeals Council granted Plaintiff's request for review on February 24, 2015, and remanded the case to the ALJ.

3. A second hearing was held before ALJ Eric Glazer on July 1, 2015, at which Plaintiff's counsel consented to receiving the testimony and evidence from the prior proceeding into the record, and at which a vocational expert testified. At the time of the remand hearing, Plaintiff was 53 years old, with a high school diploma and past work experience as a painter. On July 31, 2015, the ALJ issued a written decision again denying Plaintiff's application for benefits. The Appeals Council denied Plaintiff's request for review on December 8, 2016. Plaintiff filed the current action on January 20, 2017, challenging the Commissioner's final decision.[1]

4. On June 13, 2017, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 6). On September 20, 2017, the Commissioner filed a Motion for Judgment on the Pleadings. (Docket No. 11). Plaintiff filed a reply on October 17, 2017 (Docket No. 12), at which time this court took the matter under advisement without oral argument. For the following reasons, Plaintiff's motion is granted, Defendant's motion is denied, and this case will be remanded.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983); <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a

---

[1] The ALJ's July 31, 2015, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

3

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since March 6, 2012, the alleged onset date (R. at 20);[2] (2) Plaintiff's fractures of the left thumb, hip, ribs, index finger and pelvis are severe impairments within the meaning of the Act (R. at 20); (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 21); (4) Plaintiff retained the residual functional capacity ("RFC") to perform a range of medium work as defined in 20 C.F.R. § 404.1567(b), with certain exceptions[3] (R. at 21-22); (5) Plaintiff could not perform his past relevant work (R. at 26); and (6) Plaintiff could perform jobs that exist in significant number in the national economy (R. at 27). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act during the relevant period—March 6, 2012, through July 31, 2015. (R. at 28).

11. Plaintiff's first challenge to the ALJ's decision is that the ALJ reached his RFC assessment without properly considering the opinions of his treating physicians. Specifically, Plaintiff argues that the ALJ's failure to give more than "partial" or "little" weight to the opinions of any of his treating physicians resulted in a determination improperly based on the ALJ's substituted medical opinion. Having reviewed the ALJ's decision in light of Plaintiff's arguments, the Court finds reversible error.

12. Plaintiff's two treating physicians were Dr. Donald Robinson and Dr. Nisha Sharma, both of whom had significant treatment relationships with Plaintiff. Dr. Robinson

---

[2] Citations to the underlying administrative record are designated as "R."
[3] The ALJ found that Plaintiff retained the RFC for medium work, except that he can lift, carry, push and pull up to 35 pounds occasionally and 15 pounds frequently; he can sit for six hours in an eight-hour workday; he must alternate to standing after for [sic] five minutes. (R. at 25).

5

first treated Plaintiff shortly after his accident. On May 7, 2012, Dr. Robinson treated Plaintiff for "bone pain, swelling and weakness," and noted that Plaintiff appeared "uncomfortable" and "in moderate distress." (R. at 468-69). Dr. Robinson next examined Plaintiff on June 7, 2012, where Plaintiff reported leg pain. (R. at 471). Dr. Robinson again examined Plaintiff on July 12, 2012, recording that Plaintiff had "moderate pain at the site of pathology" and that the "pain [was] requiring narcotic medication"; that he received partial relief of left leg pain wit medicine and that he was "tingling and hypersensitive" in his left thigh. (R. at 452). On August 16, 2012, Dr. Robinson again examined Plaintiff, and Plaintiff reported pain, stiffness, back stiffness, numbness, and "tingling and extremity weakness. (R. at 481). Although Plaintiff was "full weight-bearing," the same report stated that Plaintiff was "requiring narcotic medication" and that he "sleeps poorly." (R. at 481). Dr. Robinson also reported that Plaintiff had a "hypersensitive left thigh [and] buttocks" with "partial re[l]ief with" medicine and that Plaintiff attends physical therapy "but [reports that] pain [is] worse afterwards." (R. at 483). Dr. Robinson evaluated Plaintiff on February 15, 2013, nearly a year after Plaintiff's accident. Dr. Robinson's notes observe that Plaintiff reported "moderate pain at the site of pathology" which "requir[ed] narcotic medication" and that Plaintiff "sleeps poorly." (R. at 493).

13. Dr. Robinson completed a Physical Residual Functional Capacity Questionnaire for Plaintiff on April 26, 2013. In it, Dr. Robinson concluded, after over a year of evaluating Plaintiff over 6 visits following the injury, that Plaintiff could walk 1-2 city blocks without rest or severe pain; that Plaintiff could only sit for 20 minutes at a time; that Plaintiff could only stand for 10 minutes at a time; that during an 8-hour workday,

6

Plaintiff would require 12 to 20 5-minute breaks; that Plaintiff required 4 hours of rest during an 8-hour work day and had the ability to sit, stand, and walk for less than 2 hours a day; and concluded that "[Plaintiff's] overall pain and disability are totally disabling." (R. at 498-99).

14. Dr. Sharma is also Plaintiff's primary care physician and examined Plaintiff on a monthly basis throughout the entirety of 2014. (R. at 605-26). She initially examined Plaintiff on January 29, 2014. (R. at 625). She noted that Plaintiff walks with a cane due to past lower extremity trauma and that Plaintiff had chronic pain syndrome. (R. at 625-26). Dr. Sharma next evaluated Plaintiff on March 5, 2014, where she noted Plaintiff's complaints of pain on his right shoulder and suggested surgical consultation. (R. at 624). During an August 11, 2014 examination, Dr. Sharma noted that Plaintiff was experiencing chronic pain syndrome. (R. at 613). During a March 5, 2015 examination, Plaintiff complained of left hip pain and headaches; Dr. Sharma ordered an x-ray and skull CT scan. (R. at 599-600).

15. On June 1, 2015, Dr. Sharma completed a Medical Source Statement on Plaintiff's Residual Functional Capacity. In it, Dr. Sharma concluded that Plaintiff's maximum capacity to sit continuously was 15 minutes, and that Plaintiff would need to stand or walk for 30 minutes before returning to a seated position; that in an 8-hour work day, Plaintiff could sit for only 1 hour; that Plaintiff required additional rest during an 8-hour work day; and that for 6 hours in an 8-hour workday, Plaintiff would need to rest lying down or reclining. (R. at 704-705).

16. "The SSA recognizes a rule of deference to the medical views of a physician who is engaged in the primary treatment of a claimant. Thus, the opinion of a claimant's

7

treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (internal citation, quotation marks, and alterations omitted); Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) ("[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" (quoting 20 C.F.R. § 404.1527(d)(2)).

17. Thus, "to override the opinion of the treating physician, [the Second Circuit has] held that the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (quoting Burgess, 537 F.3d at 129) (emphasis added). When the ALJ does not give a treating physician's medical opinion controlling weight, he must explain how he weighed the factors in 20 C.F.R. § 404.1527(c). See Reyes v. Barnhart, 226 F. Supp. 2d 523, 529 (S.D.N.Y. 2002).

18. The Second Circuit has consistently instructed that the failure to provide good reasons for not crediting the opinion of a plaintiff's treating physician is a ground for remand. See Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and we will continue remanding when we encounter

opinions from ALJ's [sic] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) ("The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."); Schall v. Apfel,134 F.3d 496, 503-05 (2d Cir. 1998) (remanding where court found ALJ failed to provide good reasons).

19. Here, the ALJ failed to provide good reasons for affording Dr. Sharma's and Dr. Robinson's opinions "little weight," and specifically, less than controlling weight. Significantly, the ALJ concluded that both Dr. Robinson's and Dr. Sharma's findings were inconsistent with the medical evidence of record as a whole, without citing to any specific record evidence to support that proposition. (R. at 26). That was error. See Doria v. Colvin, No. 13-CV-598S, 2014 WL 3109184, at *3 (W.D.N.Y. July 8, 2014) ("While the ALJ is free is assign little or even no weight to a treating source under certain conditions, the ALJ's failure to elaborate these findings is troubling. The ALJ does not explain what 'medical evidence' the ALJ's opinion is inconsistent with."); Nix v. Astrue, No. 07-cv-344, 2009 WL 3429616, at *9 (W.D.N.Y. Oct. 22, 2009) ("In terms of the ALJ's finding of inconsistencies with 'objective medical evidence,' the ALJ commits legal error by failing to articulate the 'objective medical evidence' with which these findings are inconsistent."). Moreover, in discrediting Dr. Sharma's opinion, the ALJ heavily relied on Plaintiff's daily living activities to discount the opinion. This Court has held that such reasoning is "specious and unsupported by the law or common sense," and thus reversible error. Miller v. Colvin, 122 F. Supp. 3d 23, 29 (W.D.N.Y. 2015) (finding that the ALJ erroneously discredited a treating source's opinion because plaintiff was "capable of activities such as

engaging in activities of daily living, fixing cars in a garage, and overseeing his own medical psychiatric treatment").[4] Further, as in Miller, the ALJ here did not explain how the performance of Plaintiff's activities translated into the ability to perform substantial gainful work. Id. at 29 (Plaintiff's ability to perform activities for an unspecified amount of time does not undermine a doctor's opinion regarding Plaintiff's limitations).

20. Moreover, even if Dr. Robinson's and Dr. Sharma's opinions were not controlling, the ALJ failed to consider the required factors in assessing what weight their opinions should be afforded, "an error that requires remand." Marsceill v. Colvin, No. 14-CV-797S, 2015 WL 7573239, at *4 (W.D.N.Y. Nov. 25, 2015).

21. Having closely examined the record, this Court finds that the ALJ failed to properly consider the opinions of the treating and examining physicians, and that his rejection of those opinions is not supported by substantial evidence in the record, particularly considering that that ALJ cites to no contradictory medical opinion evidence. Remand is therefore required for the ALJ to properly consider the medical opinion evidence.

22. In addition to challenging the ALJ's consideration of the medical evidence, Plaintiff also argues that the ALJ improperly found Plaintiff's testimony not credible; erred in failing to include Plaintiff's right shoulder osteoarthrosis as a "severe impairment"; and failed to rest his RFC determination on the objective evidence of record. This Court offers

---

[4] Moreover, Plaintiff also argues that, in finding Plaintiff not credible, the ALJ relied on mischaracterizations of Plaintiff's testimony at the hearing with respect to his ability to exert himself physically. Pl.'s Br. at 22-24. Plaintiff appears to be correct. Specifically, while the ALJ found that Plaintiff was able to care for his 12-ft long pet alligator, carrying buckets of water; traveled to Florida; owns and maintains a rental property; and thus his "limitations are not as extreme as [Plaintiff] alleges," (R. at 26), Plaintiff's testimony from the hearing reveals that these record mischaracterizations are correct: Plaintiff also testified that his friend assists him in cleaning the tank; that the alligator has a self-cleaning reverse filtration system (R. at 80, 86); and that his rental property business partner has had to take on a more active role in property maintenance due to Plaintiff's injuries. (R. at 90-91).

no opinion on these arguments at this time since the case is being remanded on other grounds. On remand, the ALJ is free to address these arguments to the extent he deems necessary.

23. After carefully examining the administrative record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision. Plaintiff's Motion for Judgment on the Pleadings is therefore granted. Defendant's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:	November 17, 2018
	Buffalo, New York

                                              /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                        United States District Judge